## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HAIZUANNA ZANO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 22-2748 (RBW) |
| v. | ) | |
| | ) | |
| DENIS R. MCDONOUGH, Secretary of | ) | |
| Veterans Affairs,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Haizuanna Zano, proceeding <u>pro se</u>, brings this civil action against her

employer, the Department of Veterans Affairs ("the Department"), and two Department

employees, Kenneth Brooks and Dennis Wells, asserting the following claims: (1) violations of

the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, <u>see</u> Complaint for Employment

Discrimination ("Compl.") § II, ECF No. 1; (2) discrimination and the creation of a hostile work

environment based on her race, color, and sex, and retaliation in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, <u>see</u> <u>id.</u>; and (3) discrimination, failure

to provide a reasonable accommodation for her disability, and retaliation in violation of the

Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, <u>see</u> <u>id.</u>  Currently pending before

the Court is the Defendant[']s Motion to Dismiss ("Def.'s Mot."), ECF No. 15, pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Upon careful consideration of the

---

[1] For the reasons discussed <u>infra</u> Section III.B, Denis McDonough—the United States Secretary of Veterans Affairs—is substituted for the Department of Veterans Affairs, Kenneth Brooks, and Dennis Wells, as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and

deny in part the defendant's motion.

## I.      BACKGROUND

**A.      Factual Background**

The following allegations are derived from the plaintiff's Complaint, unless otherwise

specified.  The plaintiff is employed at the Department of Veteran Affairs, where she alleges that

from "January 2016 [to] May 2019" the Department "[f]ail[ed] to accommodate [her]

disability[,]" subjected her to "[u]nequal terms and conditions of [ ] employment[,]" and

retaliated against her for engaging in protected activity.  Compl. § III(A); id. § III(B); see also id.

§ I(C).  The plaintiff further alleges that the "[d]efendant[] discriminated against [her] based on

[her]" race (African American), color (Black), gender (female), and "mental and physical health

disabilities related to the military."  Id. § III(D).

More specifically, the plaintiff claims that she "was retaliated against, harassed,

intimidated, falsely accused of being habitually late, openly retaliated against in front of [her] co-

workers, was in a hostile work environment, retaliated against [for her] disability through

reasonable accommodation, and other prohibited actions."  Id. § III(E).  She further alleges that

she "was retaliated against mainly by Mr. Wells shortly after [filing her] first complaint [of

discrimination] in 2017[, and] [l]ater, [by] Mr. Brooks from 2016 [to] 2019[.]"  Id.  The plaintiff

claims that she filed "approximately [twenty-five] overall charges in the [Equal Employment

Opportunity Commission (EEOC)] Court."  Id.  However, her "last two complaints never made it

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Points and Authorities in Support of Defendant[']s Motion to Dismiss ("Def.'s Mem."), ECF No. 15-1; (2) the Response to Defendant[']s Memorandum of Points and Authorities in Support of Defendant[']s Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 17; and (3) the Reply in Further Support of Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 19.

to an actual hearing, [as] the Agency and the EEOC proclaimed that [she] did not have a [prima facie] case[.]"  Id.

**B.      Procedural Background**

The plaintiff filed her Complaint in this case on September 12, 2022.  See Compl. at 1.  On August 21, 2023, the defendant filed his motion to dismiss.  See Def.'s Mot. at 1.  In response, the plaintiff filed her response on October 6, 2023, see Pl.'s Opp'n at 1, and the defendant filed his reply in support of his motion on October 23, 2023, see Def.'s Reply at 1.

## II.      STANDARD OF REVIEW

**A.      Rule 12(b)(1)**

"Federal [district] courts are courts of limited jurisdiction[,]" Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] . . . subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  Because "[i]t is to be presumed that a cause lies outside [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

"In deciding a [Rule] 12(b)(1) motion, the [C]ourt need not limit itself to the allegations of the complaint."  Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see Jerome

3

Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Additionally, the Court must "assume the truth of all material factual allegations in the complaint

and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can

be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642

F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir.

2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer

scrutiny in resolving a [Rule] 12(b)(1) motion than in resolving a [Rule] 12(b)(6) motion for

failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (first and second alterations in

original) (internal quotation marks omitted).

**B.      Rule 12(b)(6)**

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can

be granted[.]" Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the court to draw [a] reasonable inference that the defendant is liable

for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the

complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be

derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012)

(internal quotation marks omitted).  While the Court must "assume [the] veracity" of any "well-

pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the

assumption of truth." Iqbal, 556 U.S. at 679.  Thus, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. Finally, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

In applying the above framework, the Court is mindful of the fact that the plaintiff is proceeding in this matter pro se. This appreciation is required because the pleadings of pro se parties are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a pro se litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a dispositive motion. See Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999). However, just like parties represented by attorneys, a pro se litigant "must comply with the Federal Rules of Civil Procedure and this Court's local rules[.]" Hedrick v. Fed. Bureau of Investigation, 216 F. Supp. 3d 84, 93 (D.D.C. 2016) (citations omitted); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## III.   ANALYSIS

The defendant argues that the Complaint should be dismissed because: (1) "as a Department employee for more than one year, [the p]laintiff lacks a cause of action under the

Family Medical Leave Act[;]" (2) the plaintiff "did not plausibly allege that she was subject to discrimination, retaliation, or [a] hostile work environment in violation of Title VII[;]" and (3) "as a federal employee, [the p]laintiff cannot bring a claim under the American with Disabilities Act, but to the extent that her Americans with Disabilities Act claim can be liberally construed as a Rehabilitation Act claim, that claim also fails because [the p]laintiff did not plausibly allege that the Department discriminated against her because of her disability, failed to accommodate her disability, or retaliated against her because she sought a disability accommodation."  Def.'s Mem. at 1.  Moreover, the defendant claims that "the Court should dismiss all claims against [Kenneth] Brooks and [Dennis] Wells because the Secretary of the Department is the only proper defendant in this lawsuit."  Id.  In response, the plaintiff argues that: (1) she "has [a] right of action under [the] FMLA[,]" as she "is a Title V [e]mployee and not a Title II [e]mployee as the [defendant] claims in [his] request to dismiss the [p]laintiff's case[,]" Pl.'s Opp'n at 11; (2) she "has valid claims of discrimination, retaliation, or hostile work environment under Title VII[,]" id. at 8; and (3) she "has duly stated claims [under] the Americans with Disabilities Act and [u]nder the Rehabilitation Act[,]" id. at 11.  Furthermore, the plaintiff claims that the defendant incorrectly "assume[s] that the [p]laintiff cannot raise any claims of discrimination against the very two people [i.e., Kenneth Brooks and Dennis Wells] who worked together to make the work environment hostile against the [p]laintiff, caused her mental and physical anguish, and performed prohibited personnel actions against the [p]laintiff."  Id. at 7.  The Court will consider each of the defendant's claims in turn.

## A.      Whether the Plaintiff Has a Private Right of Action Under the FMLA

The Court first considers the defendant's claim that the plaintiff "lacks a cause of action under the Family Medical Leave Act."  Def.'s Mem. at 1.  The defendant alleges that the plaintiff

"is a Title II federal employee for purposes of the FMLA" and "[s]he therefore has no private right of action to bring a claim under the FMLA." Id. at 14.  In response, the plaintiff claims that she "is a Title V [e]mployee and not a Title II [e]mployee as the [defendant] claims in [his] request to dismiss the [p]laintiff's case." Pl.'s Opp'n at 11.

"The FMLA grants private and federal employees periods of leave for certain family or health related events." Sullivan-Obst v. Powell, 300 F. Supp. 2d 85, 99 (D.D.C. 2004).  "Title I of the FMLA governs private sector and federal employees with less than 12 months of service." Id. (emphasis added) (citing 29 U.S.C. §§ 2601, et seq.).  "Title II of the FMLA governs actions relating to federal employees with more than 12 months of service." Id. (emphasis added) (citing 5 U.S.C. §§ 6381, et seq.); see also Chandler v. Bernanke, 531 F. Supp. 2d 193, 201 (D.D.C. 2008) ("Title I of the FMLA governs private sector and federal employees with less than 12 months of service, and Title II pertains to federal employees with more than 12 months of service." (internal citations omitted)).  "While both titles guarantee the same substantive rights, Title I expressly creates a private right of action to redress violations, whereas Title II does not." Sullivan-Obst, 300 F. Supp. 2d at 99; see also Gardner v. United States, No. 96-cv-1467 (EGS), 1999 WL 164412, at *7 (D.D.C. Jan. 29, 1999) ("Title I and Title II parallel each other in terms of the substantive rights provided for employees. . . .  However, the two provisions differ in one critical respect: where Title I provides for a private right of action for employees that suffer violations under the Act, Title II includes no such enforcement remedy." (omission in original) (internal quotation marks omitted)).

Here, the plaintiff's claims are based on workplace-related incidents that occurred between "January 2016 [and] March 2019[,]" Compl. § III(B), and thus, as a federal employee

with more than twelve months of service, the plaintiff would be subject to Title II of the FMLA.[3]

"As a result, Title I of the FMLA does not afford the plaintiff an avenue to assert her claim,

given that she does not qualify as a federal employee with less than 12 months of service."

Sullivan-Obst, 300 F. Supp. 2d at 99; see also Chandler, 531 F. Supp. 2d at 201 ("It is undisputed

that [the] plaintiff is a federal employee with more than twelve months of service.  Consequently,

[the] plaintiff is not covered by Title I of the FMLA and cannot avail herself of the private right

of action found there." (internal citation omitted)).  Accordingly, given that the plaintiff lacks a

cause of action under the FMLA, the Court must dismiss her FMLA claim.

**B.      Whether the Plaintiff's Title VII and Rehabilitation Act Claims Against the Individual Defendants Can Proceed**

The Court next considers the defendant's claim that the Court should dismiss the

plaintiff's Title VII and Rehabilitation Act "claims against [Kenneth] Brooks and [Dennis] Wells

because the Secretary of the Department is the only proper defendant in this lawsuit."  Def.'s

Mem. at 1.  More specifically, the defendant argues that "[b]ecause neither [Kenneth] Brooks nor

[Dennis] Wells are the current head of the Department, they are inappropriate defendants to any

putative Title VII or Rehabilitation Act action, and thus they should be dismissed from this

case."  Id. at 5.  In response, the plaintiff claims that the defendant incorrectly "assume[s] that

the [p]laintiff cannot raise any claims of discrimination against the very two people who worked

together to make the work environment hostile against the [p]laintiff, caused her mental and

physical anguish, and performed prohibited personnel actions against the [p]laintiff."  Pl.'s

Opp'n at 7.

---

[3] The plaintiff claims that she is a "Title V [e]mployee and not a Title II [e]mployee[,]" Pl.'s Opp'n at 11, but Title V of the FMLA does not exist.

Title VII "protects federal employees from workplace discrimination and provides a cause of action for employees to seek redress for violations of the statute." Webster v. Mattis, 279 F. Supp. 3d 14, 18 (D.D.C. 2017). "But '[t]he only proper defendant in a Title VII suit . . . is the head of the department, agency, or unit' in which the allegedly discriminatory acts transpired." Id. (alteration and omission in original) (quoting Matta v. Snow, No. 02-cv-862 (CKK), 2005 WL 3454334, at *2 (D.D.C. Dec. 16, 2005)); see also Hackley v. Roudebush, 520 F.2d 108, 115 n.17 (D.C. Cir. 1975) ("The only proper defendant in a Title VII suit . . . is the head of the department, agency, or unit in which the allegedly discriminatory acts transpired." (internal quotation marks omitted)). "The same is true of a civil action under the Rehabilitation Act." Nurriddin v. Bolden, 674 F. Supp. 2d 64, 81 (D.D.C. 2009). More specifically, "[s]ince the Rehabilitation Act draws from the procedures of Title VII, the only proper defendant is the head of the department, agency or unit." Paegle v. Dep't of Interior, 813 F. Supp. 61, 64 n.2 (D.D.C. 1993) (internal citation and quotation marks omitted). Accordingly, here, the only appropriate defendant for the plaintiff's Title VII and Rehabilitation Act claims is the current Secretary of Veterans Affairs in his official capacity—viz., Denis McDonough. "Thus, [Denis McDonough] [is] substituted as the sole defendant." Wilson v. U.S. Dep't of Transp., 759 F. Supp. 2d 55, 67 (D.D.C. 2011); see Fed. R. Civ. P. 25(d). The Court must therefore dismiss the plaintiff's Title VII and Rehabilitation Act claims against Kenneth Brooks and Dennis Mills.

## C.   Whether the Plaintiff Has Stated a Title VII Claim Against the Secretary of Veterans Affairs

Next, the Court considers the defendant's contention that "even liberally construing [the p]laintiff's [C]omplaint, [the p]laintiff fails to plead sufficient allegations that she was subject to discrimination, retaliation, or hostile work environment in violation of Title VII." Def.'s Mem. at 6. More specifically, the defendant argues that the plaintiff "makes conclusory allegations

about being harassed and falsely accused," and that such "allegations [cannot] support discrete

discrimination claims."  Id.  In response, the plaintiff claims that she "has valid claims of

discrimination, retaliation, or hostile work environment under Title VII."[4]  Pl.'s Opp'n at 8.  The

Court will examine each claim in turn.

### 1.   Whether the Plaintiff Has Stated a Claim for Discrimination Under Title VII

In her Complaint, the plaintiff alleges that the "[d]efendant[] discriminated against [her]

based on [her] race[,] color[, and] gender/sex[.]"  Compl. § III(D).  She further alleges that she

"was retaliated against, harassed, intimidated, falsely accused of being habitually late, openly

retaliated against in front of [her] co-workers, [and] was in a hostile work environment."  Id. §

III(E).  In response, the defendant argues that the plaintiff's discrimination claim is deficient for

two reasons.  First, the defendant claims that "[t]he treatment [the p]laintiff complains of [do not

constitute] adverse actions under the post-Chambers[v. District of Columbia, 35 F.4th 870 (D.C.

Cir. 2022)] rubric."  Def.'s Mem. at 9.  Second, the defendant contends that "even if the slights

[the p]laintiff described did constitute adverse employment actions, [the p]laintiff still could not

sustain a discrimination claim based on these allegations because she pleaded no allegations that

this treatment occurred because of her race or gender."  Id. at 10.

---

[4] The plaintiff also states that "[i]f the Court allows this case to move forward, the [p]laintiff will make [ ] clear twenty-five [additional] charges she brought against the Agency [in her EEOC complaints], and possibly more, [as] they will be legally defined[.]"  Pl.'s Opp'n at 6.  However, the Court has not been provided with any specific allegations regarding these charges, either in the plaintiff's Complaint or in any of her other filings in this matter. See generally Compl.  "Pro se litigants must comply with the Federal Rules of Civil Procedure[,]" which includes "Rule 8(a)[, which] requires complaints to contain . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Freeman v. Wal-Mart Stores, Inc., No. 11-cv-1259 (EGS), 2011 WL 2728457, at *1 (D.D.C. July 12, 2011) (quoting Fed. R. Civ. P. 8(a)).  "The Rule 8 standard ensures that [ ] defendants receive fair notice of the claim[s] being asserted so that they can prepare a responsive answer and an adequate defense[.]"  Id. Here, the plaintiff has not set forth which claims in her EEOC complaints she will include in this lawsuit or provided any "supporting facts and, thus, ha[s] failed to [provide] any notice of [her additional twenty-five] claim[s]."  Id. Accordingly, to the extent that the plaintiff intended to raise these additional twenty-five claims in her Complaint, those claims have not been adequately pleaded and therefore are not compliant with the requirements of Federal Rule of Civil Procedure 8(a), see Ciralsky v. C.I.A., 355 F.3d 661, 669 (D.C. Cir. 2004) (explaining that "Rule 41(b) authorizes the [C]ourt to dismiss either a claim or an action because of the plaintiff's failure to comply with" Rule 8), and are not cognizable in this case.

Title VII of the Civil Rights Act of 1964 states that "it is an unlawful employment practice for an employer to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff alleging discrimination under Title VII must therefore show that "(i) [she] suffered an adverse employment action (ii) because of [her] race, color, religion, sex, [or] national origin[.]"  Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e-16(a)).

In Chambers v. District of Columbia, 35 F.4th at 872, the District of Columbia Circuit ruled that an adverse employment action is one that alters the "terms, conditions, or privileges of employment."[5]  The phrase "terms, conditions, or privileges of employment" is intentionally broad because it "evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986)).  Accordingly, a plaintiff must plead that an alleged adverse employment action "gives rise to an inference of discrimination."  Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015).

Here, the Court need not decide whether the treatment the plaintiff claims she was subjected to constitute adverse employment actions, because even if the alleged conduct altered the plaintiff's "terms, conditions, or privileges of employment," Chambers, 35 F.4th at 876, her Title VII claim still fails because she does not plausibly allege that the alleged discrimination

---

[5] The defendant contests whether Chambers applies to Title VII's "federal sector provisions."  Def.'s Mem. at 8; see also id. at 7 ("Other judges in this District[] have declined to return to the true text of the federal sector provisions of Title VII, holding that while 'Chambers announced an interpretive return to Title VII's plain text as far as the private-sector adverse-action standard is concerned[,] . . . it did not so much as hint that the private-sector and federal-sector provisions should no longer be construed alike.'" (quoting Bain v. Off. of Att'y Gen., No. 21-cv-1751 (RDM), 2022 WL 17904236, at *21 (D.D.C. Dec. 23, 2022))).  Instead, the defendant requests that the Court "find only events that are 'personnel actions' under the [Civil Service Reform Act] actionable under Title VII's federal sector provisions." Id. at 9.  However, the Court need not decide this issue because even under the most stringent application of Chambers, the plaintiff's discrimination claim fails.

was "because of [her] race, color, religion, sex, [or] national origin[.]"  Baloch, 550 F.3d at 1196

(citing 42 U.S.C. § 2000e-16(a)).  More specifically, while the plaintiff alleges that her

supervisors were discriminatory in their treatment of her, she fails to provide any factual

information linking the alleged adverse actions to her race, color, or sex.  See generally Compl.

§§ III(E), V.  Instead, the plaintiff simply makes conclusory statements that she was

discriminated against based on her race, color, and sex.  See Compl. § III(D) (alleging that the

defendant "discriminated against [the plaintiff] based on [her] race[,] color[, and] gender/sex").

However, such "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to state a claim.  Iqbal, 556 U.S. at 678 (citing Twombly,

550 U.S. at 555); see Keith v. U.S. Gov't Accountability Off., No. 21-cv-2010 (RC), 2022 WL

3715776, at *5 (D.D.C. Aug. 29, 2022) (finding allegations that simply invoke the plaintiff's

protected status insufficient to state a claim).

        The plaintiff's Complaint is otherwise devoid of meaningful information on which to

evaluate her claim.  See generally Compl. §§ III(E), V.  For example, the plaintiff alleges that

she was "harassed, intimidated, [and] falsely accused of being habitually late," but does not

elaborate further on such instances or provide the Court with any information to conclude that

these alleged instances were because of her race, color, or sex.  Compl. § III(E).  Thus, these

statements are insufficient to survive a motion to dismiss because they do not "give[] rise to an

inference of discrimination."  Walker, 798 F.3d at 1091; see Keith, 2022 WL 3715776, at *4–5

("The only factual allegations in the complaint describe the various events that [the plaintiff]

contends were adverse actions.  For these to support an inference of discrimination, a similarly

situated employee must have been treated differently. . . . [Accordingly, the plaintiff's]

allegations in support of her contention that she faced discrimination on the basis of her race,

sex, age, and disability 'stop[] short of the line between possibility and plausibility of entitlement to relief.'" (quoting Iqbal, 556 U.S. at 678)); Budik v. Howard Univ. Hosp., 986 F. Supp. 2d 1, 7–8 (D.D.C. 2013) (Walton, J.) (dismissing discrimination claim based on disparate treatment because the plaintiff did not allege that similarly-situated employees of a different race were treated differently).  Accordingly, the Court must dismiss the plaintiff's Title VII discrimination claim.

### 2.  Whether the Plaintiff Has Stated a Claim for Retaliation Under Title VII

The Court next considers the plaintiff's Title VII retaliation claim.  The plaintiff alleges that she "was retaliated against mainly by Mr. Wells shortly after [filing her] first complaint [of discrimination] in 2017."  Compl. § III(E).  In response, the defendant contends that "[the] [p]laintiff's [C]omplaint provides insufficient detail to sustain a retaliation claim under Title VII."  Def.'s Mem. at 11.  "Upon review of the [plaintiff's] [C]omplaint, the Court concludes that the liberal pleading standard for a retaliation claim has been met."  Rhodes v. Napolitano, 656 F. Supp. 2d 174, 184 (D.D.C. 2009) (quoting Wiley v. Glassman, 511 F.3d 151, 155 (D.C. Cir. 2007)).

"To bring an actionable retaliation claim under Title VII, the plaintiff 'must show that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two.'"  Id.  Accordingly, the Court must first consider whether the plaintiff "engaged in a statutorily protected activity[.]"  Id.  To engage in a protected activity, the plaintiff must show that she opposed "a practice that [she] reasonably and in good faith believed was unlawful under [Title VII]."  McGrath v. Clinton, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (emphasis omitted).  "By filing a formal complaint of discrimination . . .[, a plaintiff] engage[s] in protected activity."  Holcomb v. Powell, 433 F.3d 889, 902 (D.C. Cir. 2006); see also Walker v. Mattis, 319 F. Supp. 3d 267, 271 (D.D.C. 2018)

("Filing a complaint of discrimination . . . plainly constitutes protected activity.").  Moreover,

"[i]t is well settled that Title VII protects informal, as well as formal, complaints of

discrimination."  Richardson v. Gutierrez, 477 F. Supp. 2d 22, 27 (D.D.C. 2007); see Mansfield

v. Billington, 432 F. Supp. 2d 64, 73 n.3 (D.D.C. 2006) ("Because Title VII protects informal

complaints such as letters, the plaintiff has stated a claim for retaliation under Title VII."); cf.

Bell v. Gonzales, 398 F. Supp. 2d 78, 94 (D.D.C. 2005) ("Initiation of EEO counseling to

explore whether an employee has a basis for alleging discrimination constitutes protected

activity, even in the absence of an unequivocal allegation of discrimination.").  However,

"[w]hile no 'magic words' are required, the complaint must in some way allege unlawful

discrimination [based on race, color, religion, sex, [or] national origin.]"  Broderick v.

Donaldson, 437 F.3d 1226, 1232 (D.C. Cir. 2006).

      Here, the plaintiff clearly engaged in protected activity when she first "brought these

issues [of alleged discrimination] to the Office of Resolution Management [ ] in 2017," Compl. §

III(E), and then filed an EEOC charge on December 26, 2018, see Compl. at 8.  Indeed, her

EEOC complaint "alleg[ed] discrimination and harassment by the [defendant] on the bas[i]s of

[her] race [ ], sex [ ], color [ ], disability (mental and physical), and reprisal for prior protected

EEO activity under Title VII of the Civil Rights of 1964."  Id. at 8.  Accordingly, the plaintiff

has shown that "she engaged in a statutorily protected activity."  Rhodes, 656 F. Supp. 2d at 184;

see Holcomb, 433 F.3d at 902 (holding that "by filing a formal complaint of discrimination . . .

[a plaintiff] engage[s] in protected activity.").

      Next, the Court considers whether the plaintiff has adequately pleaded that she "suffered

a materially adverse action by her employer."  Rhodes, 656 F. Supp. 2d at 184.  "Adverse actions

in the retaliation context encompass a broader sweep of actions than those in a pure

discrimination claim." Paschal v. District of Columbia, 65 F. Supp. 3d 172, 177 (D.D.C. 2014) (quoting Baloch v. Kempthorne, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008)).  More specifically, "[r]etaliation actions are 'not limited to [those] that affect the terms and conditions of employment.'"  Id. (quoting Burlington N. & Santa Fe Ry. Co v. White, 548 U.S. 53, 64 (2006)).  Instead, "[a] materially adverse action [for the purposes of a Title VII retaliation claim] is one that could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Id. (quoting Porter v. Shah, 606 F.3d 809, 817–18 (D.C. Cir. 2010)).

The Court concludes that the plaintiff has asserted that she suffered a materially adverse action by her employer as grounds for her Title VII retaliation claim.  The plaintiff alleges that she "was retaliated against, harassed, intimidated, falsely accused of being habitually late, openly retaliated against in front of [her] co-workers, was in a hostile work environment, . . . and other prohibited actions." Compl. § III(E).  She also claims that she received "wrongful [absent without leave designations]," and as a result, lost her sick leave because it was converted from "FMLA-[leave of absence] to FMLA-[leave without pay.]"  Compl. § V.  Reduced income and leave benefits are adverse actions that could "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  Burlington, 548 U.S. at 57; Reid v. Buttigieg, No. 20-cv-1262 (TJK), 2023 WL 2184549, at *10 (D.D.C. Feb. 23, 2023) ("Examples [of materially adverse actions] include a 'reduction in grade, pay, or benefits,' an 'extraordinary reduction in responsibilities that persisted for years,' and a transfer that diminishes the employee's responsibilities.") (citing Holcomb, 433 F.3d at 902; Pardo-Kronemann v. Donovan, 601 F.3d 599, 607 (D.C. Cir. 2010)) (internal citations omitted).  Here, when the plaintiff allegedly received "wrongful [absent without leave designations]," and her sick leave time was allegedly converted from "FMLA-[leave of absence] to FMLA-[leave without pay,]" she experienced

reductions in her benefits and income.  Compl. § V.  Such reductions could "dissuade a reasonable worker from making or supporting a charge of discrimination[,]" Paschal, 65 F. Supp. 3d at 177, and thus qualify as adverse actions at this stage of the proceedings, see Reid, 2023 WL 2184549, at *10 ("Examples [of materially adverse actions,] include a 'reduction in . . . benefits'" (citing Holcomb, 433 F.3d at 902)).

Finally, the Court considers whether the plaintiff has asserted the required causal nexus between the alleged adverse actions and her prior protected activity.  "A plaintiff may establish a causal connection by showing a close temporal proximity between [her] involvement in protected activity and the materially adverse action taken by [her] employer."  Jones v. Bernanke, 685 F. Supp. 2d 31, 39 (D.D.C. 2010).  Moreover, courts in this Circuit have repeatedly "emphasized that a plaintiff alleging retaliation faces a relatively low hurdle at the motion to dismiss stage."  Id.; see Doe 1 v. George Washington Univ., 369 F. Supp. 3d 49, 79 (D.D.C. 2019) (Walton, J.) ("[A]t the motion to dismiss stage, the hurdle of alleging a causal link is not a high one[.]").  More specifically, at the motion to dismiss stage of a case, a "plaintiff can meet her prima facie burden of causation simply by alleging that the adverse actions were caused by her protected activity."  Vance v. Chao, 496 F. Supp. 2d 182, 187 (D.D.C. 2007); see Rochon v. Gonzales, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (noting that "in order to survive a motion to dismiss, 'all the complaint has to say' is 'the [defendant] retaliated against me because I engaged in protected activity.'" (first alteration in original) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000))).

Here, the plaintiff alleges that she "brought [her] issues [of alleged discrimination] to the Office of Resolution Management [ ] in 2017[,]" and that "[she] was retaliated against mainly by Mr. Wells shortly after [filing her] first complaint [of discrimination] in 2017."  Compl. § III(E).

Recognizing the "relatively low hurdle" plaintiffs face at the motion to dismiss stage, Jones, 685 F. Supp. 2d at 39, the Court concludes that the plaintiff has satisfied her burden of pleading a causal connection between the alleged adverse actions and her prior protected activity by alleging that she "was retaliated against," and that "[she] was retaliated against mainly by Mr. Wells shortly after [filing her] first complaint [of discrimination] in 2017." Compl. § III(E); see Rochon, 438 F.3d at 1220 (noting that "in order to survive a motion to dismiss, 'all the complaint has to say' is '[the] [defendant] retaliated against me because I engaged in protected activity.'" (first alteration in original) (quoting Sparrow, 216 F.3d at 1115)).

Therefore, because the plaintiff alleges that she engaged in statutorily protected activity, suffered materially adverse actions, and that these adverse actions occurred shortly thereafter because of her protected activity, the Court finds that the plaintiff has adequately pleaded a retaliation claim under Title VII. Accordingly, the Court must deny the defendant's motion to dismiss the plaintiff's Title VII retaliation claim.

### 3. Whether the Plaintiff Has Stated a Claim for a Hostile Work Environment Under Title VII

Next, the plaintiff claims that she "was in a hostile work environment." Compl. § III(E). As the basis for this claim, she alleges that she was "retaliated against, harassed, intimidated, falsely accused of being habitually late, [and] openly retaliated against in front of [her] co-workers." Id. In response, the defendant claims that "[t]he disciplinary actions and rude treatment that [the p]laintiff references to support her hostile work environment claim are of the variety that routinely lead to dismissal of a hostile work environment claim." Def.'s Mem. at 13. Additionally, the defendant states that "[l]ike [the plaintiff's] other claims, [her] hostile work environment claim also lacks specificity." Id.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002).  "To prevail on [a hostile work environment] claim, a plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Baloch, 550 F.3d at 1201 (quoting Harris, 510 U.S. at 21).  "In determining whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Nat'l R.R. Passenger Corp., 536 U.S. at 116 (citing Harris, 510 U.S. at 23).

As a threshold matter, the plaintiff's hostile work environment claim fails because she does not provide sufficient detail in her Complaint about the alleged conduct that created the hostile work environment.  Although the Court appreciates that the pleadings of pro se parties are "to be liberally construed," Erickson, 551 U.S. at 94, "a pro se complainant must [nonetheless] plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct[,]'" Atherton v. D.C. Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting Iqbal, 556 U.S. at 679).

Here, the plaintiff's Complaint simply alleges that she "was in a hostile work environment," which does not provide the Court with the necessary "factual matter that permits the court to infer more than the mere possibility of misconduct."  Atherton, 567 F.3d at 681 (internal quotation marks and citations omitted).  If the plaintiff intended to rely on the allegations that she "was retaliated against, harassed, intimidated, falsely accused of being

habitually late, [and] openly retaliated against in front of [her] co-workers[,]" id., to support her

hostile work environment claim, those allegations are still insufficient.  More specifically, the

plaintiff provides no specific instances of such alleged harassment, retaliation, or intimidation

from which the Court can infer that these acts were "sufficiently severe or pervasive to alter the

conditions of the [plaintiff's] employment and create[d] an abusive working environment."

Baloch, 550 F.3d at 1201 (quoting Harris, 510 U.S. at 21).  Stated otherwise, the plaintiff does

not state that what her managers allegedly did constituted harassment, how many times these

alleged incidents occurred, or provide any context underlying any of the incidents to which she

alludes; thus, the Court cannot properly "determine whether a hostile work environment

exist[ed]," as there is no indication of "the frequency of the discriminatory conduct, its severity,

its offensiveness, and whether it interfere[d] with [the plaintiff's] work performance."[6] Baloch,

550 F.3d at 1201; see also Nat'l R.R. Passenger Corp., 536 U.S. at 116.  Accordingly, the Court

must dismiss the plaintiff's Title VII hostile work environment claim.

## D.      Whether the Plaintiff Has Stated a Rehabilitation Act Claim

Finally, the Court considers the defendant's contention that the plaintiff's "claims under

the ADA [ ] fail because, as a federal employee, the ADA does not apply to her."  Def.'s Mem.

---

[6] The Court further notes that the conduct about which the plaintiff complains does not appear to be "so objectively offensive as to alter the 'conditions' of [her] employment."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  Indeed, the alleged treatment that the plaintiff references to support her hostile work environment claim are of the variety that routinely lead to dismissal by courts in this Circuit.  See, e.g., Badibanga v. Howard Univ. Hosp., 679 F. Supp. 2d 99, 104 (D.D.C. 2010) (dismissing plaintiff's hostile work environment claim where he alleged that he "receiv[ed] multiple disciplinary actions for things for which he was not responsible," was told that he would be "easy to replace" because "there were many Americans searching for a job," and "was placed on administrative leave due to a false accusation of misconduct"); Nurriddin v. Bolden, 674 F. Supp. 2d 64, 93–94 (D.D.C. 2009) (dismissing plaintiff's hostile work environment claim where he alleged that his managers "lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, . . . removed some of his duties, and denied his requests to travel or otherwise failed to provide support for his work with staffing and funding"); cf. Oncale, 523 U.S. at 81 ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." (internal quotation marks omitted)).

at 15.  Alternatively, the defendant claims that "[t]o the extent that the Court is inclined to

construe [the p]laintiff's ADA claim as a claim under the Rehabilitation Act," the plaintiff "has

[nonetheless] failed to state a claim for failure to accommodate, discrimination[,] or retaliation

under the Rehabilitation Act."  Id.  In response, the plaintiff contends that "[t]he ADA does

apply to [her] because she is not only a federal employee, but also a person with disabilities

obtained from her service in Operation Iraqi Freedom [ ] and Operation Enduring Freedom."

Pl.'s Opp'n at 12.  The Court will first assess whether the plaintiff was required to bring her

disability claims pursuant to the Rehabilitation Act, rather than under the ADA.  If so, the Court

will then consider whether the plaintiff has stated a claim for discrimination, retaliation, or

failure to accommodate under the Rehabilitation Act.

### 1. Whether the Plaintiff was Required to Bring Her Disability Claims Under the Rehabilitation Act

The plaintiff brings her disability claim under the Americans with Disabilities Act.

Compl. § II.  "However, the 'ADA does not apply to employees of the federal government

because the federal government is not considered an employer under the ADA.'"  Ahmed v.

Napolitano, 825 F. Supp. 2d 112, 115 (D.D.C. 2011) (quoting Klute v. Shinseki, 797 F. Supp. 2d

12, 17 (D.D.C. 2011) (Walton, J.)); see 42 U.S.C. § 12111(5)(B)(i) (excluding "the United

States" from the definition of "employer").  Instead, the Rehabilitation Act "is the exclusive

remedy for federal employees alleging disability discrimination by a federal agency."  Raines v.

U.S. Dep't of Just., 424 F. Supp. 2d 60, 65 (D.D.C. 2006).

The plaintiff admits that she is an employee of the Department of Veterans Affairs, a

federal government agency.  See Compl. § I(C).  Accordingly, the Rehabilitation Act—not the

ADA—"is the exclusive remedy for [her claims] alleging disability discrimination by [the]

federal agency."  Raines, 424 F. Supp. 2d at 65.  However, the Court concludes "that because

[c]ourts must construe pro se filings liberally, and because the [d]efendant[] will not be prejudiced by reading the Complaint as bringing a disability claim under the Rehabilitation Act as opposed to the ADA, the Court will construe [the plaintiff's] claims as brought under the Rehabilitation Act." Welsh v. Hagler, 83 F. Supp. 3d 212, 216–17 (D.D.C. 2015) (first alteration in original) (internal quotation marks and citations omitted).

### 2. Whether the Plaintiff Has Stated a Claim for Discrimination Under the Rehabilitation Act

The plaintiff first alleges that the "[d]efendant[] discriminated against [her] based on [her] mental and physical health disabilities related to the military." Compl. § III(D). More specifically, as before, she alleges that she was "retaliated against, harassed, intimidated, falsely accused of being habitually late, openly retaliated against in front of [her] co-workers, [subjected to] a hostile work environment, and retaliated against [because of her] disability through reasonable accommodation." [7] Compl. § III(E). In response, the defendant argues that "[j]ust as with her Title VII discrimination claim, [the p]laintiff makes conclusory allegations about being harassed and falsely accused, and appears to claim that her managers wrongfully gave her a written reprimand and marked her as absent without leave, but does not establish a nexus between these actions and her disability." Def.'s Mem. at 16 (internal citations omitted).

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her [ ] disability, . . . be subjected to

---

[7] The Court will address the plaintiff's reasonable accommodation claim infra Section III.D.4. However, to the extent that the plaintiff is arguing that the defendant discriminated against her by denying her a reasonable accommodation, that claim is unavailing. See Compl. § III(D) (alleging that the plaintiff was "retaliated against [because of her disability] through reasonable accommodation"). More specifically, in her Complaint, the plaintiff provides no information regarding (1) the requested accommodation or (2) that her employer denied her that accommodation solely on the basis of her disability. See 29 U.S.C. § 794(a) (stating that the plaintiff must show that she was discriminated against "solely by reason of her [ ] disability"). Accordingly, the plaintiff's allegations regarding the denial of her reasonable accommodation are insufficient to state a claim for discrimination under the Rehabilitation Act.

discrimination" by a federal agency.  29 U.S.C. § 794(a).  To establish a prima facie case of disability discrimination under the Rehabilitation Act, the plaintiff must allege that "(1) she was a qualified individual with a disability[;] (2) her employer knew of her disability[;] and (3) she suffered an adverse employment action because of her disability."  Congress v. District of Columbia, 324 F. Supp. 3d 164, 175 (D.D.C. 2018).

Neither party appears to dispute the fact that the plaintiff was a qualified individual with a disability within the meaning of the Act or that the defendant knew about her disability.  See Def.'s Mem. at 14–17; 29 U.S.C. § 705(20)(A) (providing the definition of an individual with a disability).  Accordingly, the elements that the Court must analyze to resolve this matter are whether "[(1)] the plaintiff suffered an adverse employment action [(2)] because of the plaintiff's . . . disability."  Baloch, 550 F.3d at 1196.

It is essential that to support a discrimination claim under the Rehabilitation Act, the plaintiff must show that she was discriminated against, "solely by reason of her [ ] disability[,]" 29 U.S.C. § 794(a); see Drasek v. Burwell, 121 F. Supp. 3d 143, 154 (D.D.C. 2015) (concluding that, while a discrimination claim "brought under the ADA can rest on a 'motivating factor' causation analysis—meaning that the claim can be sustained if discriminatory animus is merely one of several factors that precipitated the adverse employment action," the proper analysis under the Rehabilitation Act "cannot be satisfied by a motivating factor test; rather, the applicable analysis is the traditional 'but-for' causation standard" because of the statutory inclusion of the word "solely") (internal citations omitted)).  Thus, the proper analysis in this case is the "but-for" causation standard, whereby the disability must be "the reason that the employer decided to act."  Drasek, 121 F. Supp. 3d at 154 (internal quotation marks omitted) (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009)).  And while "[a] plaintiff[]

need not establish a prima facie case of discrimination to survive a motion to dismiss[,] '[c]ourts can [ ] explore a plaintiff's prima facie case at the dismissal stage to determine whether the plaintiff can ever meet her initial burden to establish a prima facie case.'" Redmon v. U.S. Capitol Police, 80 F. Supp. 3d 79, 86 (D.D.C. 2015) (quoting Hutchinson v. Holder, 668 F. Supp. 2d 201, 211–12 (D.D.C. 2009)); see also Ervin v. Howard Univ., 562 F. Supp. 2d 58, 70 (D.D.C. 2008) ("A plaintiff is not required to plead a prima facie case . . . in the complaint; however, the alleged facts must support such a claim.").

Here, even assuming arguendo that the plaintiff suffered an adverse employment action, the plaintiff's discrimination claim fails because she does not allege facts which support an inference that her disability was "the reason that the employer decided to act." Drasek, 121 F. Supp. 3d at 154 (internal quotation marks omitted). As with her Title VII discrimination claim, the plaintiff alleges that her supervisors were discriminatory, but does not provide any information linking the alleged adverse actions to her disability. See generally Compl. §§ III(E); V. Instead, she simply makes conclusory statements that she was discriminated against based on her disability. See Compl. § III(D) (alleging that the defendant "discriminated against [the plaintiff] based on [her] . . . mental and physical health disabilities related to the military"). The plaintiff otherwise "fail[s] to allege any facts regarding how [she] was allegedly treated differently from any of [her] similarly situated peers. Nor ha[s] [she] shown that [the defendant's alleged actions] w[ere] in any way, let alone solely, motivated by [her] disability." B.D. v. District of Columbia, 66 F. Supp. 3d 75, 80 (D.D.C. 2014) (emphasis in original); see Walker v. District of Columbia, 157 F. Supp. 2d 11, 35 (D.D.C. 2001) ("In order to state a [discrimination] claim under . . . the Rehabilitation Act, a plaintiff must show that . . . she was discriminated against solely by reason of [ ] [her] handicap." (alterations in original) (internal

quotation marks omitted)).  Indeed, the plaintiff provides no specific instances where any of her managers referenced her disability, or otherwise treated her differently because of her disability. See generally Compl.  Accordingly, given that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[] do not suffice" to state a claim, Iqbal, 556 U.S. at 678, the Court must dismiss the plaintiff's discrimination claim under the Rehabilitation Act.

### 3. Whether the Plaintiff Has Stated a Claim for Retaliation Under the Rehabilitation Act

The Court next considers whether the plaintiff has adequately pleaded a retaliation claim under the Rehabilitation Act.  The plaintiff alleges that she was "retaliated against mainly by Mr. Wells shortly after [filing her] first complaint [of discrimination] in 2017[,]" and was "retaliated against [because of her disability] through reasonable accommodation." [8]  Compl. § III(E).  In response, the defendant contends that the "[p]laintiff does not state . . . what 'materially adverse action' her supervisors took against her in response" to her alleged protected activity.  Def.'s Mem. at 16.

"The elements of retaliation . . . claims are the same under Title VII and the Rehabilitation Act."  Doak v. Johnson, 19 F. Supp. 3d 259, 280 (D.D.C. 2014).  Accordingly, "to establish a prima facie case of retaliation [under the Rehabilitation Act], . . . the plaintiff must show '(1) that [s]he engaged in [a] statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two.'"  Id.

---

[8] As discussed supra note 7, to the extent that the plaintiff is arguing that the defendant retaliated against her by denying her a reasonable accommodation, that claim is unavailing.  See Compl. § III(D) (alleging that the plaintiff was "retaliated against [because of her disability] through reasonable accommodation").  More specifically, in her Complaint, the plaintiff provides no information regarding (1) the requested accommodation or (2) that her employer denied her that accommodation because she engaged in a protected activity.  See 29 U.S.C. § 794(a) (stating that the plaintiff must show that she was discriminated against "solely by reason of her [ ] disability").  Accordingly, the plaintiff's allegations regarding the denial of her reasonable accommodation are insufficient to state a claim for retaliation under the Rehabilitation Act.

(second, third, fourth, and fifth alterations in original) (quoting Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009)).

For the reasons already discussed when considering the plaintiff's Title VII retaliation claim, see supra Section III.C.2, the Court concludes that the plaintiff has stated a retaliation claim under the Rehabilitation Act.  See Doak, 19 F. Supp. 3d at 280 ("The elements of retaliation . . . claims are the same under Title VII and the Rehabilitation Act.").  More specifically, the Court finds that the plaintiff engaged in protected activity when she "brought these issues [of alleged discrimination] to the Office of Resolution Management [ ] in 2017," Compl. § III(E), and then filed an EEOC charge on December 26, 2018, see Compl. at 8.  Indeed, the plaintiff's EEOC complaint specifically "alleg[ed] discrimination and harassment by the [defendant a]gency on the bas[i]s of . . . disability (mental and physical)[.]"  Compl. at 8.

Furthermore, the plaintiff states that she suffered a materially adverse action when she allegedly received "wrongful [absent without leave designations]," and her sick leave time was allegedly converted from "FMLA-[leave of absence] to FMLA-[leave without pay][.]"  Compl. § V.  Such reductions in pay and benefits could "dissuade a reasonable worker from making or supporting a charge of discrimination[,]" Paschal, 65 F. Supp. 3d at 177, and thus qualify as adverse actions at this stage of the proceedings, see Reid, 2023 WL 2184549, at *10 ("Examples [of adverse actions] include a 'reduction in . . . benefits[.]'" (citing Holcomb, 433 F.3d at 902)).

Finally, given the "relatively low hurdle" plaintiffs face to demonstrate a causal link at the motion to dismiss stage, Jones, 685 F. Supp. 2d at 40, the Court concludes that the plaintiff has satisfied her burden of demonstrating a causal connection between the alleged adverse actions and her prior protected activity by alleging that she "was retaliated against," and that "[she] was retaliated against mainly by Mr. Wells shortly after [filing her] first complaint [of

discrimination] in 2017."  Compl. § III(E); see Rochon, 438 F.3d at 1220 (noting that "in order

to survive a motion to dismiss, 'all [the] complaint has to say' is '[the] [defendant] retaliated

against me because I engaged in protected activity.'") (first alteration in original) (internal

citations omitted) (quoting Sparrow, 216 F.3d at 1115).

      Therefore, because the plaintiff alleges that she engaged in statutorily protected activity,

suffered materially adverse actions, and that these adverse actions were because of her protected

activity, the Court finds that the plaintiff has stated a retaliation claim under the Rehabilitation

Act.  Accordingly, the Court must deny the defendant's motion to dismiss the plaintiff's

retaliation claim under the Rehabilitation Act.

### 4. Whether the Plaintiff Has Stated a Claim for Failure to Accommodate Under the Rehabilitation Act

      Finally, the Court considers the plaintiff's failure to accommodate claim under the

Rehabilitation Act.  See Compl. § III(A) (alleging that the "discriminatory conduct of which [the

plaintiff] complain[s] [of] in this action includes . . . [the f]ailure to accommodate [her]

disability"); id. § III(E) (alleging that the plaintiff was "retaliated against [because of her

disability] through reasonable accommodation"); Pl.'s Opp'n at 12 (alleging that the plaintiff

"was discriminated against [on the basis of] her disability because of [the] failure to properly

accommodate [her] in order to properly heal and get back to work as quickly as possible").  In

response, the defendant claims that "[a]lthough [the p]laintiff alleges that she has mental and

physical disabilities related to her military service, [she] does not allege that she sought, but was

denied, an accommodation for any disability."  Def.'s Mem. at 15.

      "[T]o prevail on a claim for failure to accommodate, the plaintiff must demonstrate that

(1) [she is] a qualified individual with a disability; (2) [her] employer had notice of [her]

disability; and (3) [her] employer denied [her] request for a reasonable accommodation."  Pappas

v. District of Columbia, 513 F. Supp. 3d 64, 86 (D.D.C. 2021).  Thus, "[a]n underlying

assumption of any reasonable accommodation claim is that the plaintiff-employee has requested

an accommodation which the defendant-employer has denied."  Flemmings v. Howard Univ.,

198 F.3d 857, 861 (D.C. Cir. 1999).

      Here, the plaintiff's claim fails on the third prong of the failure to accommodate claim—

viz., that her employer denied her request for a reasonable accommodation—because the plaintiff

does not indicate whether she actually requested any accommodation, or whether any such

request was denied.  See generally Compl.  Instead, the plaintiff simply claims "that she was

discriminated against [on the basis of] her disability because of [the] failure to properly

accommodate [her] in order to properly heal and get back to work as quickly as possible[.]"  Pl.'s

Opp'n at 12; see Compl. § III(A) (alleging that the "discriminatory conduct of which [the

plaintiff] complain[s] [of] in this action includes . . . [the f]ailure to accommodate [her]

disability").  At best, the plaintiff's allegations indicate that the defendant had notice of the

plaintiff's need for an accommodation.  However, "[n]otice of a disability does not ordinarily

satisfy the [reasonable accommodation] request requirement, which performs the independent

function of informing an employer of the limitations imposed by [the] disability and the nature of

the accommodation needed to remedy those limitations."  Waggel v. George Washington Univ.,

957 F.3d 1364, 1372 (D.C. Cir. 2020).  And although the plaintiff alludes to the fact that she

requested medical leave, Compl. § V (requesting "[c]orrection of FMLA-[leave without pay]

[entries] to FMLA-[leave of absence] entries"), "a request for a medical leave of absence

standing alone [is] insufficient to make out a request for [an] accommodation."  Waggel, 957

F.3d at 1372.  Accordingly, the Court must dismiss the plaintiff's failure to accommodate claim

under the Rehabilitation Act.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part

the defendant's motion to dismiss.

**SO ORDERED** this 24th day of May, 2024.[9]

REGGIE B. WALTON
United States District Judge

---

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.